PEPKE *v.* GRACE HOSPITAL.

1. CHARITABLE HOSPITAL—NEGLIGENCE OF EMPLOYÉS.

A charitable hospital, organized and maintained, not for private gain, but for the care and medical treatment of the sick, cannot be made liable for the negligence of its employés.[1]

2. TRUSTEES OF HOSPITAL—LIABILITY FOR NEGLIGENCE OF EMPLOYÉS.

Where the trustees of such hospital appointed a physician as house surgeon upon the recommendation of a board of 25 competent physicians and surgeons, and after an examination of the applicant, as provided by the rules of the hospital, and no charge of incompetency having ever been made against him, the trustees are not liable for his negligence in treating a patient.

---

[1] As to liability of charitable institution for negligence, see note to *Williamson* v. *Industrial School*, (Ky.) 23 L. R. A. 200.

3. MALPRACTICE—INSUFFICIENT EVIDENCE.

  Where the only evidence of malpractice against a physician
  consists in the evidence of a witness that he thought he could
  have saved more of the hand, but that he did not consider it
  negligent to do what the physician did, and that the opera-
  tion was a good job, the court should direct a verdict for the
  defendant.

Error to Wayne; Donovan, J. Submitted April 11,
1902. (Docket No. 96.) Decided May 8, 1902.

Case by Reuben Pepke, by next friend, against the
Grace Hospital, James McMillan, William C. McMillan,
Ransom Gillis, Rollin C. Olin, and Albert T. Putnam,
for negligence in the performance of a surgical operation.
From a judgment for defendants on verdict directed by
the court, plaintiff brings error. Affirmed.

Plaintiff, a boy 11 years of age, trespassed upon the
tracks of a railroad company, and climbed upon the ladder
of a freight car of a moving train to ride. Seeing some
one approach, he jumped from the car, and in doing so
fell. His hand struck upon the rail, and the wheel passed
over it, crushing the bones of the hand, and making what
plaintiff's physician said was a compound, comminuted
fracture. He was taken into an office near by, where
some one telephoned for an ambulance. Word was also
sent to his home that he had been taken to the defendant
hospital. His mother immediately telephoned the hospital
to await her arrival, and to get her family physician, Dr.
Hare. The hospital physicians waited for the arrival of
his mother, and immediately telephoned for Dr. Hare.
It was from an hour to an hour and a half before they
could find him, and he arrived about two hours after the
plaintiff reached the hospital. The physicians, deeming
it inexpedient to wait longer for the arrival of Dr. Hare,
performed the operation, and amputated the arm some-
where between the wrist and the elbow. Dr. Fletcher,
house surgeon, performed the operation, assisted by Dr.
Haggerty, the house physician. Dr. Knight, one of the

visiting surgeons, of large experience, came into the operating room about the time the arm was ready for sawing off the bone. Dr. Knight advised that more of the flesh be removed, and that the arm be amputated a little farther up; his reason for this being that the flesh had become devitalized by the accident, and there would be danger unless it was removed. The physicians agreed to this, and the operation was performed in the presence of the three. Dr. Hare arrived after the bone had been sawed off, and witnessed the rest of the operation.

Defendants James and William C. McMillan and Mr. Gillis are the trustees; Mr. Putnam is the superintendent of the hospital, but has nothing to do with the surgical operations; and Mr. Olin is a member of the medical board. Plaintiff sues the defendant hospital and its trustees for negligence in performing the operation. All the physicians, including Dr. Hare, admit that the operation was skillfully performed. The only charge of malpractice made against Dr. Fletcher and the other physicians is that more of the arm might have been saved by amputating it nearer the wrist. The charge of negligence in the declaration is that Dr. Fletcher was incompetent, and that the defendant trustees knowingly employed an inexperienced and incompetent physician. The court directed a verdict for the defendants, chiefly upon the ground that, the defendant hospital being a charitable institution, neither it nor its trustees were liable for the negligence of its employés.

*Trevor & Trevor* (*Fred. H. Aldrich,* of counsel), for appellant.

*Wells, Angell, Boynton & McMillan,* for appellees.

GRANT, J. (*after stating the facts*). 1. The defendant Grace Hospital is a charitable institution, organized and maintained in the same manner as Harper Hospital of Detroit. The liability alleged against defendant in this case is the same as that alleged in *Downes* v. *Harper*

*Hospital*, 101 Mich. 555 (60 N. W. 42, 25 L. R. A. 602. 45 Am. St. Rep. 427). That case controls this as to the liability of Grace Hospital, and the court properly directed a verdict for the defendant hospital.

2. The trustees of the hospital are laymen. The rules of the hospital provide for a medical board of 25 physicians and surgeons of the city of Detroit, who have charge of all the surgical matters in the hospital. They examine applicants for appointment upon the medical staff, and recommend such appointments to the trustees. Dr. Fletcher was appointed by the trustees upon the recommendation of the medical board. Dr. Fletcher was first appointed, after his examination, junior assistant, where he served six months; then senior assistant, where he served another six months; and was at the time of the operation serving as house surgeon. He was a graduate of a medical college of good standing. No complaint whatever is made by any person that he was inexperienced or incompetent. No intimation had ever been made by any one to defendant trustees that he was incompetent to fill the position. The trustees, who are laymen, must naturally leave the competency of their physicians and surgeons to the judgment of those competent to determine such matters, since they are not qualified to make the determination themselves. They performed their full duty towards the patrons of the hospital in appointing a competent board to examine applicants, and in acting upon its report by the appointment of Dr. Fletcher. The testimony on the part of the superintendent of the hospital, Mr. Putnam, who was a witness for the plaintiff, was that, as a surgeon, Dr. Fletcher was considered one of the most competent young men they ever had in the hospital. No charge of incompetency had ever been made against him. The trustees were therefore not negligent in retaining him. Even if this were not a charitable institution, the full duty of the trustees in employing and retaining Dr. Fletcher was performed. It is therefore unnecessary to determine, as it was in *Downes* v. *Harper Hospital*,

whether, for some active wrong or act of negligence on the part of the trustees, recovery might be had by a patient against them.

3. There is no evidence of negligence on the part of Dr. Fletcher and the attending physicians.   Dr. Fletcher was in the service of the United States army as a surgeon, in the Philippines, at the time of the trial, and was not a witness.   Dr. Haggerty and Dr. Knight were present, and both testified that the amputation was performed, in their judgment, at the proper place, giving their reasons why.   No charge against these physicians is made.   Dr. Hare testified that he would have attempted to save the arm lower down, near the wrist, and possibly the thumb, but admitted that the rest of the hand should have been amputated.   On direct examination, to a question whether it would have been possible to perform the operation so as to save any portion of the hand, he replied:

"I think so; I would have tried it.
" *Q.* Could they have saved the thumb?
" *A.* I think so."

After testifying further on direct examination as to what he would have done, he said it was a matter of individual judgment.   On cross-examination he said:

"I would not consider it negligent to do what the physicians did.   *   *   *   Different doctors have different views.   Medical and surgical men of equal experience differ in their judgment in such cases.   *   *   *   The operation was a good job."

The sole testimony as to the propriety of attempting to save more of the boy's arm in the amputation rests entirely upon this testimony of Dr. Hare.   We do not think this testimony was of any probative force to show negligence on the part of the attending surgeons, or to justify the submission of the question of malpractice to the jury. The operation was properly performed; the only differ-

130 MICH.—32.

ence in judgment being whether the arm might, with safety, have been amputated nearer the wrist.

Judgment affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.