GREATREX *v.* EVANGELICAL DEACONESS HOSPITAL.

1. CHARITIES—HOSPITALS NOT LIABLE FOR TORTS OF AGENTS.
   Hospital formed for nonprofit purposes and supported by benevolence of its contributors may not be held liable for torts of its agents or employees.

2. SAME—NEGLIGENCE OF NURSE—ASSUMPSIT—TORT.
   Hospital formed for nonprofit purposes and supported by benevolence of its contributors is not liable for nurse's mistake in giving plaintiff's baby to another, although action therefor purports to be in assumpsit, based on contract to properly care for baby, where it is apparent on its face that action is one in tort.

3. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
   Motion for new trial on ground that additional evidence had been discovered was properly denied, where part of it would not be admissible, and part admissible could have been presented at trial with reasonable diligence, but would not have affected result.

Error to Wayne; Merriam (DeWitt H.), J. Submitted November 4, 1932. (Docket No. 25, Calendar No. 34,693.) Decided January 3, 1933. Rehearing denied April 21, 1933.

Action by William C. Greatrex against Evangelical Deaconess Hospital, a Michigan nonprofit corporation, for breach of contract to properly care for his infant son. Directed verdict and judgment for defendant. Plaintiff brings error. Affirmed.

*Louis Starfield Cohane* and *Regene Freund Cohane* (*Lester S. Smith,* of counsel), for plaintiff.

*Brown, Stoneman, Lorenzo & Springstun,* for defendant.

As to liability of charitable institution for personal injuries, see annotation in 7 L. R. A. (N. S.) 481; 10 L. R. A. (N. S.) 74; 22 L. R. A. (N. S.) 486; 32 L. R. A (N. S.) 62; 42 L. R. A. (N. S.) 1144; 52 L. R. A. (N. S.) 505; 14 A. L. R. 572; 23 A. L. R. 923; 62 A. L. R. 726.

BUTZEL, J. On September 8, 1923, plaintiff, William C. Greatrex, brought his wife and their week-old baby to defendant Evangelical Deaconess Hospital, a Michigan corporation formed for nonprofit purposes. Nine days later, plaintiff's wife died and he took her body to Toronto for burial. He left the baby at the hospital with the assurance that for $1 a day the baby would receive the best of care. At about the time of the birth of the Greatrex baby, the daughter of one Vlemminck gave birth at the hospital to a child, the result of an incestuous relationship between Vlemminck and his daughter. When the daughter had recovered sufficient strength to enable her to return home, she also left the baby for care at defendant hospital. Vlemminck called for the baby, and, through the negligence of a nurse, was given the Greatrex baby. She testified that she thought it was Greatrex and not Vlemminck who was calling for the baby.

Shortly thereafter, when Greatrex called for his child and was offered the Vlemminck baby, the mistake was discovered. Efforts to recover the Greatrex baby were futile. Vlemminck claimed that he had given the child to some strangers who were passing through the city in an automobile. There is little doubt but that Vlemminck disposed of the baby in some manner. It has never been found, and there is a strong intimation that it may no longer be alive.

To recite the harrowing and pathetic details of Greatrex's discovery of the loss of his child and the uncertainty and grief that followed would serve no useful purpose in this opinion. It is sufficient to say that Greatrex has suffered a very great injury for which, as the circuit judge held, the hospital must not respond in damages. *Downes* v. *Harper*

*Hospital,* 101 Mich. 555 (25 L. R. A. 602, 45 Am. St. Rep. 427); *Pepke* v. *Grace Hospital,* 130 Mich. 493; *Bruce* v. *Henry Ford Hospital,* 254 Mich. 394. For a very complete analysis of the law and the supporting authorities, see 19 Michigan Law Review, 395; see, also, *Schloendorff* v. *Society of N. Y. Hospital,* 211 N. Y. 125 (105 N. E. 92, 52 L. R. A. [N. S.] 505, Ann. Cas. 1915C, 581); *Rudy* v. *Lakeside Hospital,* 115 Ohio St. 539 (155 N. E. 126); *Roosen* v. *Peter Bent Brigham Hospital,* 235 Mass. 66 (126 N. E. 392, 14 A. L. R. 563).

Plaintiff, in his suit against the hospital, first declared on a tort count, then on an assumpsit count, and then added the common counts. Recognizing the rule laid down by this court that a hospital, formed for nonprofit purposes and supported by the benevolence of its contributors, cannot be held liable for the torts of its agents or employees, he discontinued all the counts of his declaration except the second one in assumpsit. While the count does state that there was a contract to care for the baby at a stipulated fee per diem, the child to be returned to plaintiff when called for, the cause of action and the damages claimed differ but slightly from those set forth in the count in tort, long paragraphs from which are incorporated in the assumpsit count.

Plaintiff also attempts to ground his action on some cases in another jurisdiction where liability was found because of a failure to use reasonable care in selecting a competent nurse. It is unnecessary to discuss the correctness of such a holding, for, even were we to adopt it, the record shows that the nurse responsible for the tortious act in the instant case was a registered graduate with a background of three years of hospital training prior to her entry into defendant's employ some three years

before the occurrence for which suit is brought. Naming or labeling a count assumpsit does not make it such, when it is apparent on its face that it is one in tort. Nor is there any magic in the use of one term instead of another, when the gravamen of the act complained of is the negligence or mistake of a servant of an eleemosynary institution, exempted from liability by law under these circumstances.

The reasoning in the three Michigan cases cited applies with equal force to a case where the breach of contract was caused through the negligence of the hospital attendants. In *Downes* v. *Harper Hospital, supra,* this court said, at page 559:

"If the contention of the learned counsel for the plaintiff be true, it follows that the charity or trust fund must be used to compensate injured parties for the negligence of the trustees, or architects and builders, upon whose judgment reliance is placed as to plans and strength of materials; of physicians employed to treat patients; and of nurses and attendants. In this way the trust fund might be entirely destroyed, and diverted from the purpose for which the donor gave it. Charitable bequests cannot be thus thwarted by negligence for which the donor is in no manner responsible. If, in the proper execution of the trust, a trustee or an employee commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution. The trustees of this fund could not by their own direct act divert it from the purpose for which it was given, or for which the act of the legislature authorized the title to be vested in the defendant. It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employees, though such acts result in damage to an

innocent beneficiary. Those voluntarily accepting the benefit of the charity accept it upon this condition.

"The fact that patients who are able to pay are required to do so does not deprive the defendant of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. The amounts thus received are not for private gain, but contribute to the more effectual accomplishment of the purpose for which the charity was founded. The wrongdoer, in a case of injury, but not the trust fund, must respond in damages. This proposition seems too clear to require argument or authority. It is not, however, inappropriate to remark that better facilities for the care, cure and treatment of the sick, both of the poor and of those who are able to pay, are secured by the establishment of hospitals like that of the defendant. These facilities are increased by the receipt of money from those who are able to pay in whole or in part for the benefits received. Several hospitals of this character exist in this State, founded by private munificence. Obviously, they would not have been founded if their donors had known, or ever supposed, that their charitable purposes might be thwarted by the verdicts of juries for the negligent acts of those who must necessarily be employed in the execution of the charity. The following authorities appear to sustain the above position: *Feoffees of Heriot's Hospital* v. *Ross,* 12 Clark & F. 507 (8 Eng. Repr. 1508); *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432 (21 Am. Rep. 529); *Gooch* v. *Association for Relief,* 109 Mass. 558; *Perry* v. *House of Refuge,* 63 Md. 20 (52 Am. Rep. 495); *Union Pacific R. Co.* v. *Artist,* 9 C. C. A. 14 (60 Fed. 365, 23 L. R. A. 581)."

The principle stated was again reaffirmed in *Pepke* v. *Grace Hospital, supra,* and in *Bruce* v. *Henry Ford Hospital, supra.*

In *Duncan* v. *Nebraska Sanitarium,* 92 Neb. 162
(137 N. W. 1120, 41 L. R. A. [N. S.] 973, Ann. Cas.
1913 E, 1127), plaintiff claimed damages on account
of the breach of a contract to keep a nurse in con-
stant attendance on his wife. The court in denying
liability cited *Duncan* v. *St. Luke's Hospital,* 113
App. Div. 68 (98 N. Y. Supp. 867, affirmed in 192
N. Y. 580 [85 N. E. 1109]), in which the New York
court stated:

" 'The contract was to keep a constant watch and guard. It was
not to prevent the unfortunate patient from committing suicide.
Nor could it fairly be held to be within the reasonable intendment of
this contract that the hospital agreed to pay to the husband the value
of his wife's life to him in case she did commit suicide. There has
been no case cited to us, nor have we been able to find one, which
allows a recovery upon such a complaint or such a state of facts.
Nor can we see any reason why there should be a different rule
where the tortious act which caused death is alleged to be a breach
of an express contract from that declared where it is alleged to be a
breach of an implied contract, or where no contractual relation at all
existed.'

"This reasoning is applicable to the present
case." *Duncan* v. *Nebraska Sanitarium, supra,* 166.

The question was presented in *Rudy* v. *Lakeside
Hospital,* 115 Ohio St. 539 (155 N. E. 126), and the
court said:

"*Per Curiam.* In her statement of claim the
plaintiff relied upon an implied contract by way of
bailment as a predicate for recovery. It contained
no specific allegations of negligence, and it is con-
tended that she had the right to sue either in tort for
a negligent delivery, or for a breach of the bailment
contract.

"If this were a case of contract purely, one not
involving wrongful conduct on the part of the insti-
tution's employee, liability might attach. But this
case presents a different aspect and is based upon
an unauthorized and negligent delivery to an im-
poster.

"There is a wide divergence of opinion in the various jurisdictions of this country regarding the liability of charitable institutions whose funds are provided by benevolences. 11 C. J. pp. 374–377. This court has held that a public charitable hospital is not liable for injuries to a patient resulting from the negligence of one of its employees. *Taylor, Admr.,* v. *Protestant Hospital Ass'n,* 85 Ohio St. 90 (96 N. E. 1089; 39 L. R. A. [N. S.] 427). The only exception to the foregoing principle made by this court is that such charitable hospital is required to use reasonable care in the selection of its physicians, nurses, or attendants, in order to avoid liability for their negligence. *Taylor* v. *Flower Deaconess Home and Hospital,* 104 Ohio St. 61 (135 N. E. 287; 23 A. L. R. 900). In the first *Taylor Case, supra,* there was also an effort to base liability upon a contractual relation arising from the acceptance by the hospital of the injured plaintiff as a pay patient; however, that phase of the case did not create a liability upon the part of the hospital, in the view of this court.

"Under the theory of nonliability of charitable institutions adopted by this court, as heretofore indicated, we are unable to make any distinction between cases involving damages to the person of a patient and damages to his property, where such are caused by the wrongful act of an employee. We therefore affirm the judgment of the court of appeals, upon the authority of the two Ohio cases cited."

In directing a verdict for defendant, the trial judge correctly stated that there was no legal redress for the very grievous wrong done plaintiff; that the great good generally accomplished by a hospital and the private contributions given for its support should not be impaired or even entirely deleted by responsibility for the occasional lapses of its employees.

Plaintiff further claims error in the court's refusal to grant a motion for a new trial. The motion was based upon the claim that additional testimony would indicate greater negligence on the part of the hospital in not dismissing the nurse, and upon the assertion that defendant carried liability insurance. As far as the latter claim is concerned, such testimony would have been absolutely improper. *Sherwood* v. *Babcock*, 208 Mich. 536; *Williams' Adm'x* v. *Church Home*, 223 Ky. 355 (3 S. W. [2d] 753, 62 A. L. R. 721). The court found that with reasonable diligence the additional evidence could have been presented at the trial of the cause. In addition thereto, we might add that it would not have affected the result.

The judgment is affirmed, with costs to defendant.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.