MOORLAND TOWNSHIP v RAVENNA CONSERVATION CLUB,
INC

Docket No. 115682. Submitted March 14, 1990, at Lansing. Decided
April 17, 1990. Leave to appeal applied for.

The Ravenna Conservation Club, Inc., a nonprofit organization
incorporated in 1969 to conserve and promote natural re-
sources, owns twenty acres of land in Moorland Township upon
which is located a clubhouse, archery range, rifle range, nature
trail and stream. Prior to 1986, the property was considered by
the township to be exempt from property taxes. In 1986,
following the Supreme Court's decision in *Michigan United
Conservation Clubs v Lansing Twp,* 423 Mich 661 (1985), the
township placed the RCC's property on the tax rolls. The RCC
sought review by the township board of review, which held the
property to be exempt and removed it from the tax rolls. The
township petitioned the Michigan Tax Tribunal for review. The
Tax Tribunal reversed the determination of the board of re-
view, holding that the property was not exempt as the RCC was
neither an educational institution nor a charitable institution
as defined by the General Property Tax Act. The RCC appealed.

The Court of Appeals *held:*

1. The Tax Tribunal properly held that the RCC was not
entitled to tax exempt status as an educational institution
since, although some of its efforts are of an educational nature,
those activities do not substantially reduce the government's
educational burden.

2. The Tax Tribunal, in a conclusory fashion, held that denial
of a tax exempt status for the RCC was mandated by the
Supreme Court's decision in *MUCC v Lansing Twp.* The denial
of tax exempt status in that case turned mainly on the fact
that the use of the property was restricted to members and a
fee was charged for the publications which the MUCC dissemi-
nated. The record made before the Tax Tribunal shows access
to and use of the property by the general public without

REFERENCES

Am Jur 2d, State and Local Taxation §§ 363, 368, 370, 375, 382-384
See the Index to Annotations under Charities and Charitable
Contributions; Conservation; Taxes.

restriction, educational programs by the RCC directed at the general public, and the RCC's active assistance in various programs undertaken by or on behalf of the Michigan Department of Natural Resources. Under these circumstances, the Tax Tribunal should have found that the activities of the RCC constituted a charitable gift for the benefit of the general public without restriction such that the RCC was entitled to tax exempt status as a charitable institution.

Reversed.

1. TAXATION — TAX TRIBUNAL — APPEAL.

Review by the Court of Appeals of a determination of the Michigan Tax Tribunal is limited to determining whether the tribunal's decision is authorized by law and supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. TAXATION — EXEMPTIONS — NONPROFIT ORGANIZATIONS — EDUCATIONAL INSTITUTIONS.

A nonprofit organization seeking an exemption from property taxes as an educational institution must fit into the general scheme of education provided by the state and supported by public taxation, and must make a substantial contribution to the relief of the burden of government (MCL 211.7n; MSA 7.7[4k]).

3. TAXATION — EXEMPTIONS — NONPROFIT ORGANIZATIONS — CHARITABLE INSTITUTIONS.

A nonprofit organization seeking an exemption from property taxes as a charitable institution must show that its activities, taken as a whole, constitute a charitable gift for the benefit of the general public without restriction or for the benefit of an indefinite number of persons (MCL 211.7o; MSA 7.7[4-l]).

4. TAXATION — EXEMPTIONS — CHARITABLE INSTITUTIONS — CONSERVATION CLUBS.

A conversation club organized to promote natural resources and to assist in preserving and developing natural resources and wildlife is entitled to a tax exempt status as a charitable institution where its property and facilities are open without restriction to the public, it makes informational materials available to the public without charge and it assists the Department of Natural Resources in carrying out the department's designated purposes.

*Vander Ploeg, Ruck, Luyendyk & Wells* (by *Douglas M. Hughes*), for petitioner.

*O'Toole, Johnson, Potter, Rolf, Grafton & Eklund* (by *Thomas J. O'Toole*), and *M. Carol Bambery,* for respondent.

Before: HOOD, P.J., and MAHER and CYNAR, JJ.

PER CURIAM. Respondent, Ravenna Conservation Club (RCC), appeals as of right from a final decision of the Michigan Tax Tribunal. Relying on *Michigan United Conservation Clubs v Lansing Twp,* 423 Mich 661; 378 NW2d 737 (1985), the tribunal denied the RCC's request for tax exempt status as either an educational institution, MCL 211.7n; MSA 7.7(4k), or charitable organization, MCL 211.7o; MSA 7.7(4-l). While we affirm the decision with respect to the educational exemption, we reverse the decision denying tax exempt status as a charitable organization.

I

Our review is limited to determining whether the tribunal's decision is authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *MUCC, supra* at 673; *Ass'n of Little Friends, Inc v Escanaba,* 138 Mich App 302, 306-307; 360 NW2d 602 (1984), lv den 422 Mich 981 (1985).

The General Property Tax Act provides that all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation. MCL 211.1; MSA 7.1. In general, tax exempt statutes must be strictly construed in favor of the taxing authority. *MUCC, supra* at 664. However, this rule does not mean that we should give a strained construction which is adverse to the Legislature's intent. *Id.* The burden of showing that the requirements for an

exemption have been met is on the organization seeking an exemption. *Little Friends, supra* at 306.

## II

The RCC is a nonprofit organization that was incorporated in 1969, and whose purpose, as stated in its bylaws at that time, was

> to conserve and promote our natural resources and wildlife and assist the Department of Natural Resources in preserving and developing our natural resources and wildlife. And educating our youth in hunter safety and better use of our Natural Resources.

The bylaws still provide that the RCC is to be closely affiliated with the Michigan United Conservation Clubs, or any other organization which will assist in the conservation and promotion of natural resources and wildlife. In 1983, the RCC was named conservation club of the year. The RCC, enjoys exempt status under § 501(C)(3) of the Internal Revenue Code, 26 USC 501(C)(3), and had been considered exempt under the General Property Tax Act for approximately fifteen years until it was notified in 1986 of the township's decision to place the RCC's property on the tax rolls. The township's tax assessor testified that the sole reason for placing the RCC's property on the tax rolls was the release of our Supreme Court's decision in *MUCC, supra.* After the RCC appealed this decision to the board of review, its tax exempt status was reestablished. The township then appealed to the Michigan Tax Tribunal and a hearing was held on January 31, 1989.

At the hearing, it was established that the RCC owned approximately twenty acres of land in Moorland Township. On this property is located a

clubhouse, archery range, rifle range, nature trail and a stream. The nature trail contains markers identifying the trees along the trail. The property is not fenced in and is always available to the public at no charge. Various local groups such as the cub scouts, boy scouts, 4-H Club and Lions Club are permitted to use the clubhouse at no charge, although a fee for the cost of utilities is charged to the Lions Club.

At the time of the hearing, the RCC had 159 members who regularly volunteered their efforts, time and services towards the club's purposes. Among these activities are the annual raising of 500 to 1,500 pheasants which are then released on public land, the annual planting of approximately five thousand brook trout in public streams, the public distribution of bird houses and bird feeders at no charge, participation in a bluebird restoration program, and water pollution control and cleanup. In fact, it was the polluted condition of Crockery Creek that led to the initial formation of the club by a group a citizens who got together and were able to clean up the creek and get a new sewer system installed.

The RCC is also involved with the Department of Natural Resources on a regular basis. They assist the DNR in connection with the breeding and raising of various fish and game and assist them in various other programs and projects. For instance, the RCC had recently worked with the DNR on both a turkey release program and a steelhead program to obtain finclips and scale samples. Testimony indicated that this latter program would have been eliminated without the cooperation and assistance of the RCC. The RCC also monitors the condition of Crockery Creek, using temperature graphs furnished by the DNR that run twenty-four hours a day. Additionally, the wildlife, fishery, and law

enforcement divisions of the DNR often use the RCC's property in carrying out their duties. This too is at no charge.

The RCC's involvement also extends to area schools. Such involvement includes the sponsoring of a wildlife discovery program within the schools, the distribution of "Tracks" magazine within the schools, and the use of club property by the schools for various types of outdoor education classes and programs. This is all provided at no cost to the schools. The RCC also pays for three youths to attend an MUCC youth camp each year and pays the expenses for allowing a teacher to attend environmental courses conducted by the DNR.

Materials concerning state licensing, hunting and fishing laws are also distributed by the RCC and educational films relating to hunting, fishing and land use regulation are shown on a monthly basis. These too are provided free of charge. Five club members are also certified instructors for hunter safety classes. These classes are required by the state in order to obtain a hunting license and are provided free of charge to interested members of the public. Approximately eighty-five students attend these classes each year.

The tribunal issued its decision on February 15, 1989. Relying on *MUCC, supra,* the tribunal reversed the board of review and denied the RCC's claim for an exemption. The RCC argues on appeal that its organization is distinguishable from the MUCC and that the tribunal applied an erroneously narrow standard in interpreting *MUCC, supra.*

III

We will first address the RCC's claim that it is entitled to an exemption as an educational institu-

tion. MCL 211.7n; MSA 7.7(4k). In discussing the availability of an exemption as an educational institution, *MUCC, supra* at 668, quoting from *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 755-756; 298 NW2d 422 (1980), stated, in pertinent part:

> "Something more than serving the public interest is required to bring one claiming an exemption as an educational institution within the goals and policies affording a tax exemption.
> ". . . [A]n institution seeking an educational exemption must fit into the general scheme of education provided by the state and supported by public taxation. . . . [A]n educational exemption may be available to an institution otherwise within the exemption definition, if the institution makes a substantial contribution to the relief of the burden of government."

In this case, the tribunal noted that, although some of the RCC's efforts were of an educational nature, they were insufficient to warrant an exemption as an educational institution. As in *MUCC,* the tribunal concluded that the RCC's educational activities did not fit into the general scheme of education provided by the state nor did they substantially reduce the government's educational burden. Accordingly, it concluded the RCC was not entitled to an educational exemption. Having reviewed the record, we agree this decision was supported by competent, material and substantial evidence on the whole record.

IV

We now address the RCC's claim to an exemption as a charitable organization. MCL 211.7o; MSA 7.7(4-l). In *MUCC, supra* at 671, the following

definition was reaffirmed as the proper test to apply for determining the existence of a charitable exemption:

> "[C]harity . . . [is] a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, *or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.*" [Emphasis changed.]

The proper focus of this test is whether the organization's activities, taken as a whole, constitute a charitable gift for the benefit of the general public without restriction or for the benefit of an indefinite number of persons. *MUCC, supra* at 673.

In *MUCC,* the Supreme Court noted that, although this Court had found that the MUCC provided several services that could be considered charitable gifts, see 129 Mich App 5,[1] a charitable exemption was nevertheless improper because the organization's activities did not amount to gifts for the benefit of an indefinite number of persons or the general public without restriction. *MUCC, supra* at 673-674. It reached this conclusion on the basis of the fact that the use of the MUCC's property was generally not available to nonmembers and that the use of the club's library by a nonmember was dependant on the purpose for which it was to be used. Further, it noted that the vast majority of its publications were available to the

---

[1] This Court concluded that the denial of a charitable exemption was proper because a substantial portion of the MUCC's activity included lobbying for legislation and other political activity. However, the Supreme Court held that such activity alone was not a valid reason for denial of the exemption. 423 Mich at 673.

public for a fee, and, therefore, it was unable to characterize their dissemination as a gift. *Id.* at 674.

In analyzing the activities of the RCC in light of *MUCC, supra,* the tribunal in this case stated:

> While some facts differ in the instant case, the Tribunal herein concludes that a review of the entire record and the *predominant* activities of RCC leads to the same conclusion as stated in *MUCC*— that the "purpose and activities benefit its members and others with an active interest in the conservation of our natural resources". This does not constitute "a gift for the benefit of an indefinite number of persons" without restriction. The clear preponderance of the evidence indicates that only those persons inclined toward certain sporting activities, *e.g.,* rifle and trap shooting or archery, or natural resource conservation were intended as primary benefactors of this organization.

Thus, the tribunal's decision was not based upon the absence of a charitable gift, but upon its conclusion that, as in *MUCC, supra,* any gift was not one for the benefit of an indefinite number of persons or the general public without restriction. Although the tribunal acknowledged the presence of factual differences between the MUCC and the RCC, it failed to elaborate as to what these factual differences were. Instead, it made a conclusory determination that the result in *MUCC, supra,* mandated the same result in this case.

We believe the factual distinctions which the tribunal failed to identify are significant and require reversal of the tribunal's decision.

The two main reasons given for denying an exemption in *MUCC, supra,* were the MUCC's general restriction of the use of its property to members only and the fact that a fee was charged for

the dissemination of its publications. Neither of these factors are applicable to this case. Rather, the RCC's property is always available to the public at no charge, and its various publications and informational brochures are also distributed to both the general public and throughout the schools free of charge. Another distinction is that although the MUCC charged a fee for their hunter safety classes no fee was charged by the RCC. Most significant, perhaps, is the fact that, while the MUCC is a statewide organization whose efforts are primarily directed towards the dissemination of information, the RCC is a local organization engaged in actual conservation and wildlife activities either through its own independent efforts or by assisting the DNR.

Although club members who volunteer their time and efforts obviously have an active interest in the conservation of natural resources and wildlife, and therefore realize a personal benefit from their accomplishments, the record establishes that the general public is both the actual and intended ultimate benefactor of the club's efforts.

The conservation and promotion of our natural resources and wildlife is an important objective in this state. Indeed, Const 1963, art 4, § 52 declares the conservation and development of the state's natural resources to be of paramount public concern and expressly requires the Legislature to provide for the protection of the air, water and other natural resources. Towards this objective, the Legislature has created the Department of Natural Resources, MCL 16.350; MSA 3.29(350), and has designated among its several purposes the protection and conservation of the state's natural resources, the provision and development of facilities for outdoor recreation, the prevention of pollution of lakes and streams, and the fostering and

encouraging of the protection and propagation of game and fish. See MCL 299.3; MSA 13.3.

These are all purposes intended to benefit the general public without restriction. According to the record, both the stated purposes and actual activities of the RCC address these objectives. The RCC's property is open to the public; and, in addition to its own independent activities, the RCC works directly with the DNR in assisting it in carrying out its designated purposes. Without the assistance of the RCC, various DNR projects could not be implemented or would otherwise have to be discontinued.

Therefore, we believe that, by dedicating itself to the conservation and promotion of natural resources and wildlife, areas which have been expressly declared to be of paramount public concern, and by either engaging in independent activities addressing these areas or assisting the state agency charged with the same, the RCC has not only lessened an expressly recognized burden of government but has also conferred a laudable "gift" on the community at the same time.

Accordingly, we find that the tribunal's decision reversing the board of review and denying a charitable exemption to the RCC is not supported by competent, material and substantial evidence on the whole record, and is therefore reversed.

Reversed.