GUARDIOLA v OAKWOOD HOSPITAL

Docket No. 145000. Submitted March 2, 1993, at Detroit. Decided July 6, 1993, at 9:30 A.M.

Erma Guardiola, guardian of Joanne Guardiola, an incompetent person, brought an action in the Wayne Circuit Court against Oakwood Hospital and Arthur Morley, M.D., alleging medical malpractice that allegedly caused Joanne to become permanently disabled shortly after her birth in 1956. Liability on the part of the hospital was alleged to have arisen both as a result of the hospital's direct negligence in selecting and training its employees and as a result of vicarious liability for its employees' alleged negligence. The hospital asserted the defense of charitable immunity. The court, Paul S. Teranes, J., granted summary disposition for the hospital of the vicarious liability counts on the basis of charitable immunity, holding that the hospital was a charitable institution in 1956, when the cause arose. The plaintiff appealed.

The Court of Appeals *held:*

1. The determination whether a hospital is a charitable institution within the meaning of the now-abolished charitable immunity doctrine is one of fact and must be decided by the finder of fact unless the facts are so conclusively persuasive that the trial court may rule as a matter of law. Because stare decisis does not control findings of fact, the trial court erred in holding that the determination in *Cibor v Oakwood Hosp,* 14 Mich App 1 (1968), controls the outcome in this case.

2. On remand, the trial court, in determining whether the facts are so conclusively persuasive that it can rule as a matter of law that the defendant hospital was a charitable institution, should consider all the available data, rather than that relating solely to the year 1956, and should consider whether the hospital enjoyed any private gain, whether it was formed under a statute specifically providing for charitable organizations, and whether it enjoyed tax-exempt status. Although the court in

REFERENCES

Am Jur 2d, Charities §§ 183, 189; Courts §§ 185, 190.

Tort immunity of nongovernmental charities—modern status. 25 ALR4th 517.

making its determination may consider whether most patients paid for their care and whether the hospital occasionally had an excess of income over expenses, neither of those factors is dispositive of the question whether the defendant hospital was a charitable institution.

Reversed and remanded.

WAHLS, P.J., concurring, stated that the "conclusively persuasive" standard to be applied in charitable immunity cases was not a new standard but was merely another way of stating the traditional standard that summary disposition should be granted only where a record cannot be developed that would leave open an issue on which reasonable minds might differ.

1. TORTS — CHARITABLE IMMUNITY — SUMMARY DISPOSITION.

The determination whether an institution is a charitable institution within the meaning of the charitable immunity doctrine is one of fact and must be decided by the finder of fact unless the facts are so conclusively persuasive that the trial court may rule as a matter of law.

2. COURTS — STARE DECISIS — FINDINGS OF FACT.

The doctrine of stare decisis does not control findings of fact; accordingly, findings of fact in a prior case do not dictate the outcome of factual findings in a later case.

3. HOSPITALS — TORTS — CHARITABLE IMMUNITY — SUMMARY DISPOSITION.

A trial court in determining whether pleaded facts are so conclusively persuasive that it can rule as a matter of law that a hospital was a charitable institution should consider whether the hospital enjoyed any private gain, whether it was formed under a statute specifically providing for charitable organizations, and whether it enjoyed tax-exempt status.

*Thurswell, Chayet & Weiner* (by *Gerald E. Thurswell* and *Tammy J. Reiss*), for the plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenny, P.C.* (by *Susan Healy Zitterman* and *Linda M. Garbarino*), for Oakwood Hospital.

Before: WAHLS, P.J., and WEAVER and CORRIGAN, JJ.

CORRIGAN, J. In this medical malpractice action,

plaintiff appeals the grant of partial summary disposition to defendant pursuant to MCR 2.116(C)(10). We reverse and remand for further proceedings.

Joanne Guardiola was born at Oakwood Hospital on August 25, 1956. After her birth, she developed hyperbilirubinemia, which led her to suffer permanent mental disabilities. Plaintiff did not sue defendants for medical malpractice until 1990, some thirty-four years later. The counts against defendant hospital alleged both direct negligence in selecting and training its employees and vicarious liability for the employees' alleged negligence.

Defendant answered, asserting the defense of charitable immunity. It later also sought summary disposition of the vicarious liability counts on that basis. In its analysis of the immunity question, the circuit court first determined that the critical issue was whether defendant was a charitable institution as that term was applied in Michigan in 1956, when plaintiff's cause of action arose. The parties did not challenge the court's framing of the question. The circuit court held that defendant was indeed a charitable institution in 1956, relying in part on *Cibor v Oakwood Hosp,* 14 Mich App 1, 7-10; 165 NW2d 326 (1968).[1]

The circuit court held: "Since the Court of Appeals has ruled that the trial court did not err in finding that Oakwood Hospital was a charitable institution, [*Cibor*] would be binding on this Court under the doctrine of stare decisis." The court

---

[1] Curiously, neither party refers to *Stann v Ford Motor Co,* 361 Mich 225, 233; 105 NW2d 20 (1960), where a plurality affirmed a finding that Oakwood Hospital was a charitable institution. The plaintiff in *Stann* alleged injury arising from an operation performed on July 17, 1956. "From the record before him it is obvious that the judge found as a matter of law that defendant hospital was a nonprofit charitable institution." *Id.* at 231. The *Cibor* Court was aware of *Stann,* as the court below observed.

alternatively concluded: "Even if the Court did not have the *Cibor* case to rely on, this Court finds as a matter of law that Oakwood Hospital was a charitable institution in 1956 and therefore immune from liability for the acts of its employees, agents or servants." Finding no other "genuine issues of material fact," the court granted defendant's motion pursuant to MCR 2.116(C)(10).

I

GOVERNING LEGAL STANDARDS

The proper standard governing summary disposition is, in itself, an issue in this appeal. The circuit court relied on the decision in *Cibor* in determining whether summary disposition was appropriate. The *Cibor* Court held:

> Under *Hodgson v William Beaumont Hosp*, [373 Mich 184, 186; 128 NW2d 542 (1964)], this issue [whether the defendant is a charitable institution] is one of fact and must be decided by the finder of fact *unless the facts are so "conclusively persuasive" that the trial judge may rule as a matter of law*. [14 Mich App 7; emphasis supplied.]

The "conclusively persuasive" standard was apparently introduced in *Hodgson*. The *Hodgson* Court also indicated that the definition of "charitable" as it applies to hospitals should be taken from *Bruce v Henry Ford Hosp*, 254 Mich 394, 399-400; 236 NW 813 (1931), and *Podvin v St Joseph Hosp*, 369 Mich 65, 67; 119 NW2d 108 (1963):

> The test which determines whether a hospital is charitable or otherwise is *its purpose, that is, whether it is maintained for gain, profit, or advantage, or not*. And the question of whether a hospital is maintained for the purpose of charity or for

that of profit is to be determined, in case the hospital is incorporated, not only from its powers as defined in its charter but also from the manner in which it is conducted. [373 Mich 187, n *; emphasis supplied.]

The *Hodgson* Court dissected consideration of the manner in which a hospital is conducted into a number of elements, but did not elucidate any standards for measuring when the facts are so conclusively persuasive that a court can rule as a matter of law that a hospital is a charitable institution. *Id.* at 186.

The law in effect at the time of the injury usually controls the parties' rights and liabilities. See *Jones v Williams*, 172 Mich App 167, 171; 431 NW2d 419 (1988), citing *Husted v Consumers Power Co*, 376 Mich 41; 135 NW2d 370 (1965); *Turrentine v General Motors Corp*, 198 Mich App 572, 575; 499 NW2d 411 (1993). Unfortunately, *Hodgson* seems to neglect this principle. In *Hodgson*, the plaintiff's cause of action had accrued before September 15, 1960, the date on which charitable immunity was abolished in Michigan. See *Parker v Port Huron Hosp*, 361 Mich 1, 28; 105 NW2d 1 (1960). The Supreme Court originally remanded *Hodgson* to the circuit court for the taking of proofs on a variety of factors. 373 Mich 185-186. After remand, the Court set forth some different factors to be considered and remanded again for trial. *Id.* at 187. *Hodgson* thus retroactively applied a new standard for determining what constitutes "charitable immunity" in Michigan, despite the Supreme Court's prospective abrogation of charitable immunity to cases arising after September 15, 1960.[2] Although our research has not disclosed any case following the same

---

[2] The *Parker* rule applies prospectively only, i.e., to "causes of action arising after September 15, 1960." 361 Mich 28. See also, e.g.,

approach, we acknowledge that we are bound to follow *Hodgson* and accordingly remand this case for further proceedings. *Parker, supra* at 28. See also *Murray v Beyer Memorial Hosp,* 409 Mich 217, 224; 293 NW2d 341 (1980) (WILLIAMS, J., concurring).

On appeal, plaintiff vigorously asserts that the dispositive question is whether defendant was a charitable institution "in 1956," rather than in 1960, the year in which the *Cibor* plaintiff's claim arose. Nonetheless, she argues that *Hodgson* supplies the appropriate test. We agree, in part.

The circuit court erred in holding that *Cibor* controlled "under the doctrine of *stare decisis.*" "The rule of *stare decisis* establishes uniformity, certainty, and stability *in the law." Parker, supra* at 10 (emphasis supplied). Stare decisis does not control findings of fact. The holding in *Cibor,* then, does not dictate the outcome in this case as to the factual findings. It remains the role of the trial court to make findings relative to issues related to the determination whether "the facts are so 'conclusively persuasive,'" *Hodgson, supra* at 186, i.e., whether, as a matter of law, defendant was a charitable institution. In making its determination, the court should consider the elements discussed in this opinion as well as those set forth in the *Hodgson* opinion. The court should consider all the available data, rather than confining its examination solely to the year 1956. If, after examining the evidence presented, the court does not find the facts regarding charitable immunity to be "conclusively persuasive," the issue must be submitted for jury determination.

*Grant v Cottage Hosp Corp,* 368 Mich 77, 78; 117 NW2d 90 (1962); *Browning v Paddock,* 364 Mich 293, 297; 111 NW2d 45 (1961); *Hardigree v Green,* 97 Mich App 62, 65-66; 293 NW2d 719 (1980), rev'd on other grounds 409 Mich 913 (1980).

### A

### ELEMENTS OF CHARITABLE IMMUNITY IN MICHIGAN

Before 1960, charitable immunity was well established in Michigan as a defense to negligence liability of hospitals. The defense was first accepted in Michigan in *Downes v Harper Hosp,* 101 Mich 555; 60 NW 42 (1894), where a woman sued the hospital after her husband, a patient, jumped to his death from a hospital window. The Court examined the purposes for which the hospital had been organized ("the succor, care, and relief of such aged, sick, poor persons who shall apply for the benefit of the same," *id.* at 558), then stated:

> The [*in*]*corporators receive no compensation or dividends.* It is purely an eleemosynary institution, *organized and maintained for no private gain,* but for the proper care and medical treatment of the sick. . . . The receipts have not always been sufficient to meet ordinary expenses, and one year a private citizen gave $1,000 towards the deficiency. *The law under which the defendant is organized recognizes it as a charity; exempts its property from taxation*; provides that its funds shall be used faithfully and exclusively for the purposes of its organization, and that it may receive, by gift, grant, or devise, any property, but only for the purpose for which it is incorporated. It has no shares, and is not a stock corporation. [*Id.* at 559; emphasis supplied.]

An excellent summary of what constituted a "charitable institution" in Michigan appears in the dissenting opinion to *Parker, supra.*

> It has been uniformly recognized by the courts of this State up to the present time that *an organization* of the character of defendant, *formed and maintained with no purpose of private gain* but to

the end that those in need of surgical and medical attendance might receive proper treatment, and deriving a part of its resources from charitable gifts, cannot be held liable for injuries to a patient on the ground of negligence on the part of an employee or employees. [361 Mich 32 (CARR, J., dissenting); emphasis supplied.]

*Podvin v St Joseph Hosp,* 369 Mich 65, 67-68; 119 NW2d 108 (1963), applied *Downes* and *Bruce* to find that a hospital was immune from liability for a 1955 injury:

[The defendant's motion for summary judgment] was supported by affidavits and a deposition showing definitely that *the hospital was organized for nonprofitable purposes*; that the hospital *was never engaged in any activity for pecuniary gain or profit,* and that it was qualified in fact for the right of immunity charitable and nonprofit hospital corporations enjoyed prior to [the decision in *Parker, supra*]. The showing made by the defendant hospital was undisputed. . . . Plaintiff was not, in these circumstances, entitled to jury trial of the issue. [Emphasis supplied.]

See also *Erwin v St Joseph's Mercy Hosp of Detroit,* 323 Mich 114, 116; 34 NW2d 480 (1948) (examining whether the hospital was organized for "eleemosynary and charitable purposes" and if it "is being operated in accordance with those stated purposes"); *Bruce v Henry Ford Hosp, supra* at 397 (examining organization and conduct of the institution); *Bruce v Central Methodist Episcopal Church,* 147 Mich 230, 242; 110 NW 951 (1907) (referring to "express legislative recognition of a hospital as a charitable asylum"); *Pepke v Grace Hosp,* 130 Mich 493, 495-496; 90 NW 278 (1902) (holding that the hospital was "a charitable institution, organized and maintained in the same

manner as Harper Hospital of Detroit" and so entitled to charitable immunity); *Greatrex v Evangelical Deaconess Hosp,* 261 Mich 327, 333; 246 NW 137 (1933) (holding that "the great good generally accomplished by a hospital" "should not be impaired" by negligence liability).

The central importance of an institution's dedication to charitable purposes is apparent in *Gallon v House of Good Shepherd,* 158 Mich 361; 122 NW 631 (1909). The defendant in *Gallon* was an orphan asylum formed under 1855 PA 20. *Id.* at 362. The Court stated flatly that "[s]ocieties organized under the provisions of the act, whose purposes are charitable, are charitable societies." *Id.* at 366.[3] The statute referred to in *Gallon* is the predecessor of 1931 PA 327, § 148, under which Oakwood Hospital was incorporated in 1948. That statute, MCL 450.148; MSA 21.149,[4] provides for the formation of "trustee corporations," corporations administered "for the benefit of religious, charitable, benevolent, educational institutions or public benefaction of whatsoever name or nature."

*Downes* and its progeny highlight two elements as central to the determination, in Michigan, of an institution's entitlement to charitable immunity: whether it has enjoyed any private gain (*Downes, supra* at 559; *Podvin, supra* at 68; *Parker, supra* at 32; *Martinson v Alpena,* 328 Mich 595, 598; 44 NW2d 148 [1950]) and whether it was formed under a statute specifically providing for charitable organizations (*Downes, supra* at 559; *Podvin, supra* at 68; *Gallon, supra* at 366). On remand, the court is directed to consider both of these factors

[3] The Court affirmed a verdict for the plaintiff, for reasons unaffected by the defendant's status as a charitable institution.

[4] The current statute is identical to that appearing in the 1948 compilation.

as one step in making its factual findings under the conclusively persuasive standard.[5]

## B

### SIGNIFICANCE OF STATE AND FEDERAL TAX EXEMPTION

Defendant's status as a tax-exempt institution is another factor that the lower court should consider. See, e.g., *Parker, supra* at 37 ("the legislature of the State has by affirmative action expressly exempted from taxation the property of organizations like the [defendant]"); *Auditor General v R B Smith Memorial Hosp Ass'n,* 293 Mich 36, 41; 291 NW 213 (1940); *Fifth Dist Republican Committee v Employment Security Comm,* 19 Mich App 449, 455; 172 NW2d 825 (1969). In *Michigan Sanitarium & Benevolent Ass'n v Battle Creek,* 138 Mich 676, 681; 101 NW 855 (1904), the Court essentially applied a tort immunity analysis to find a similarly situated plaintiff exempt from taxation:

> Plaintiff's testimony shows that at this sanitarium it received and treated sick and infirm persons; . . . that its total disbursements during [an eighteen-month period] were more than $20,000 in excess of its receipts; that during this time many patients had been treated free, and that many had paid less than the full price; . . . [and] that *none of plaintiff's funds had ever gone to any member of the association.* [Emphasis supplied.]

Even though most of the patients paid at the

[5] We note that it is undisputed that defendant is not operated for private profit and that it was organized to operate as a hospital and engage in "scientific research and educational or other activities which are related to and are designed to promote and improve the general health and welfare."

regular fixed rate, "the charges collected from patients were not larger than were necessary to the successful maintenance of the institution." *Id.* at 682-683. The Court concluded that "[s]uch a corporation is sufficiently charitable to entitle it to the privileges of the act." *Id.* at 683. Qualifying for a tax exemption is more difficult than qualifying for tort immunity. Thus, meeting the requirements of the former may be probative of whether the latter should apply.

Michigan's provisions for exemption from state property taxes are even stricter than those of the Internal Revenue Code, 26 USC 501(c)(3). *Asher Student Foundation v East Lansing,* 88 Mich App 568, 575; 278 NW2d 675 (1979); *American Concrete Institute v State Tax Comm,* 12 Mich App 595, 606; 163 NW2d 508 (1968). Michigan provides that "[r]eal estate or personal property owned and occupied by *nonprofit charitable institutions incorporated under the laws of this state* with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated" is exempt from taxation. MCL 211.7o; MSA 7.7(4-l); emphasis supplied. See also, e.g., *Chauncy & Marion Deering McCormick Foundation v Wawatam Twp (After Remand),* 196 Mich App 179, 183; 492 NW2d 751 (1992).

In the tax exemption context, the Supreme Court in *Michigan United Conservation Clubs v Lansing Twp,* 423 Mich 661, 671; 378 NW2d 737 (1985), quoting *Retirement Homes of the Detroit Annual Conference of the United Methodist Church, Inc v Sylvan Twp,* 416 Mich 340, 348-349; 330 NW2d 682 (1982), defined "charity" as "a *gift,* to be applied consistently with existing laws, *for the benefit of an indefinite number of persons . . . by relieving their bodies from disease.*" (Emphasis in original.)

The proper focus of this test is whether the organization's activities, taken as a whole, constitute a charitable gift for the benefit of the general public without restriction or for the benefit of an indefinite number of persons. *Id.* at 673; see also *Moorland Twp v Ravenna Conservation Club, Inc,* 183 Mich App 451, 458; 455 NW2d 331 (1990). The Supreme Court's description in *MUCC, supra,* is persuasive. The circuit court should consider whether defendant is an organization whose activities, taken as a whole, benefit the public "without restriction or for the benefit of an indefinite number of persons."

Two themes—charitable purpose and lack of private profit—remained constant throughout the history of charitable immunity in Michigan. On remand, the court should closely heed these principles in determining whether defendant was a nonprofit charitable institution. Plaintiff has provided no evidence that any of defendant's incorporators received any private gain, but instead contends that adverse inferences should be drawn from defendant's inability to produce documents relating to its 1956 tax status. We decline this invitation; plaintiff has benefited from the savings provisions of former MCL 609.15; MSA 27.607,[6] see now MCL 600.5851; MSA 27A.5851, but she should not profit in this regard by her decades-long delay.[7]

### C

#### OTHER FACTORS

Plaintiff argues that several factors are critical to a determination of defendant's status as a chari-

---

[6] If any person entitled to bring any of the actions mentioned in this chapter shall, at the time when the cause of action accrues, be within the age of 21 years, insane, or imprisoned in the state prison, such person may bring the action within the times in this chapter respectively limited, after the disability shall be removed.

[7] Although defendant raised laches as an affirmative defense when it answered plaintiff's complaint, that question is not before us.

table institution. Although we agree that the court may consider these elements, we do not find any of them dispositive of the issue. The fact that most patients paid for their care, in itself, does not make a hospital a noncharitable institution; *Downes, supra* at 560; *Bruce v Henry Ford Hosp, supra* at 400. Neither does defendant's practice of "charging off uncollectible accounts," *id.* at 400, nor the occasional excess of income over expenses. An institution's charitable status does not vary with its balance sheet from one year to the next. See *Auditor General, supra* at 41 ("It does not lose its charitable character even though in some years . . . it shows a small surplus which is used to supply needed equipment."). That defendant wound up the 1956 fiscal year with a net income of $187,000 on a total income of $2.7 million alone cannot defeat its charitable status. Nor do we find the relatively small dollar amount of "free work" that defendant performed in 1956 controlling. No opinion, including that in *Hodgson,* makes this element central to its definition of "charitable." *Hodgson,* in fact, does not opine which of the multiple factors should be the most significant.

Plaintiff relies on defendant's failure to set aside "free beds" for nonpaying patients to insist that defendant was not "charitable." This assertion however, is without foundation in case law. This Court will not search for authority to sustain or reject a party's position. *People v Fowler,* 193 Mich App 358, 361; 483 NW2d 626 (1992).

Finally, we also direct the court to examine whether defendant rendered services with or without the expectation of payment. A profit-making entity will generally not extend credit unless it believes it will be paid, while a provider that serves first and asks questions later is more likely to be "charitable" in intent.

We reject plaintiff's claim that partial summary disposition was improper because the court relied on the deposition testimony of a former employee, who provided the bulk of the available evidence. A genuine issue of material fact does not exist in the absence of contradictory evidence brought forth by the nonmoving party. *Hartmann v Shearson Lehman Hutton, Inc,* 194 Mich App 25, 30; 486 NW2d 53 (1992), citing *McCart v J Walter Thompson USA, Inc,* 437 Mich 109, 115; 469 NW2d 284 (1991). "The nonmovant may not rest upon mere allegations in the pleadings but must, *by the use of documentary evidence,* set forth specific facts showing a genuine issue for trial." *Parpart v Detroit,* 194 Mich App 561, 563; 487 NW2d 506 (1992), citing MCR 2.116(G)(4); emphasis supplied. Plaintiff has presented no evidence that contradicts the former employee's statements regarding defendant's admission policies, compensation to its directors, or any other *material* facts at issue. Rather, she contends merely that he may be biased. This allegation alone is insufficient. The court ruled properly on the evidence before it.

Plaintiff also argues that, even if defendant was a charitable institution in 1956, the doctrine of charitable immunity would not bar her claim because she was a "stranger" to the charity. As noted *supra,* however, this exception has been rejected. See, e.g., *Downes, supra* at 560; *Greatrex, supra* at 331; *Bruce v Central Methodist Episcopal Church, supra* at 238 (doctrine applies equally to those who are not beneficiaries of the institution).

Plaintiff's final claim, that charitable immunity does not protect defendant from claims regarding its selection of employees, is moot. The circuit court's order clearly applied only to the vicarious liability counts.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

Weaver, J., concurred.

Wahls, P.J. *(concurring)*. I largely agree with the majority's analysis and result, but write separately to express my belief that *Hodgson v William Beaumont Hosp,* 373 Mich 184; 128 NW2d 542 (1964), did not establish a "new standard" for summary disposition of issues of charitable immunity. Rather, I believe that the Supreme Court's use of the phrase "conclusively persuasive" in *Hodgson* is simply another way of stating the principle that a motion for summary disposition (or, as in *Hodgson,* a motion to dismiss) based on the lack of a material factual dispute should be granted only where a record cannot be developed that would leave open an issue upon which reasonable minds might differ. See, e.g., *Buczkowski v Allstate Ins Co (On Rehearing),* 198 Mich App 276, 278; 502 NW2d 343 (1993); *Anderson v Sanders,* 14 Mich App 58, 61; 165 NW2d 290 (1968). *Hodgson* simply follows the rule that judgment on the motion is one of law for the trial court where the facts are undisputed. Because *Hodgson* did not announce a new standard, the Court cannot be faulted for ignoring the principle that the law in effect at the time of an injury controls the parties' rights and liabilities. *Hodgson* simply provides some factors worthy of consideration in deciding whether a hospital is a charitable institution for the purpose of immunity. *Hodgson* represents a clarification of existing law and is entitled to retroactive application. *People v Jahner,* 433 Mich 490, 504; 446 NW2d 151 (1989).