MICHIGAN SANITARIUM & BENEVOLENT ASS'N *v.* CITY OF BATTLE CREEK.

1. TAXATION—RECOVERY OF TAXES PAID—PLEADING.
   Illegal taxes paid under protest may be recovered as money had and received under the common counts.

2. SAME—PAYMENT BY CHECK.
   The fact that one paying his taxes under protest as illegal did so by giving a check for the amount, which was subsequently cashed, does not prevent his recovery of the taxes.

3. SAME—POSTPONEMENT OF COLLECTIONS.
   The fact that a taxpayer obtained a postponement of the time for the payment of his city taxes, until the warrant for the State, county, and school taxes was received, in order that they might all be paid together under protest, does not prevent his recovery of the same, the payment having been made under protest, and the agreement under which the postponement was obtained contemplating a payment under protest.

4. SAME—EXEMPT PROPERTY—SANITARIUM—USE OF FUNDS.
   On the question whether a sanitarium association, incorporated under chapter 224, 3 Comp. Laws, used all its funds exclusively "for the purposes thereof, as set forth in its articles," as provided by section 6, so as to render its property exempt from taxation, as provided by section 7, it sufficiently proved that it had not paid dividends, where it proved that none of its funds had gone to its members, except as it had paid wages or salaries.

5. SAME—USE OF FUNDS WITHIN STATE.

Purchasing supplies outside of the State is not a violation of section 6 of the sanitarium act, requiring an association, incorporated under that act, and exempting its property from taxation under section 7, to use its funds wholly within the State. Chap. 224, 3 Comp. Laws.

6. SAME—BURDEN OF PROOF—INSTRUCTION—HARMLESS ERROR.

On the question of whether the funds of plaintiff, a sanitarium association organized under chapter 224, 3 Comp. Laws, were used wholly within the State, as required by section 6, the error, if any, in charging the jury that the "burden of proving that the funds were used without the State rested on defendant," was harmless, where all the testimony on the subject showed that the funds were properly used.

7. APPEAL AND ERROR—QUESTIONS CONSIDERED—OBJECTIONS NOT RAISED BELOW—BRIEFS.

An objection not raised in the trial court, nor in appellant's original brief, but only in a supplemental brief, will not be considered in this court.

8. TAXATION—EXEMPT PROPERTY—CHARITIES—SANITARIUMS.

A sanitarium association, incorporated under chapter 224, 3 Comp. Laws, is sufficiently charitable in its character to entitle its property to exemption from taxation, under section 7 of that act, where the charges collected for services are not more than are required for its successful maintenance.

9. SAME—FUNDS AND PROPERTY EXEMPT.

Section 8294, 3 Comp. Laws, exempting from taxation the property of charitable hospitals or asylums established with trust funds, exempts from taxation not the original trust fund, but "the property on which such asylum or institution building stands * * * while occupied for the objects and purposes thereof," whether it is or is not a part of the original trust fund.

10. SAME—INCLUDING NONEXEMPT PROPERTY.

The owner of exempt property erroneously assessed for taxes does not lose the entire benefit of the exemption because some nonexempt property is included in the assessment.

11. SAME—USE OF EXEMPT PROPERTY.

A sanitarium association, incorporated under chapter 224, 3 Comp. Laws, is not required to use all of its funds "for the care and relief of indigent or other sick and infirm persons within this State," to exempt its property from taxation, under section 7 (3 Comp. Laws, § 8294), since such requirement

would prevent the association from using its funds for the proper maintenance of the institution.

12. SAME—ESTOPPEL TO CLAIM EXEMPTION.

A corporation whose property is exempt from taxation because of the character and purposes of the concern is not estopped from claiming the exemption by acts or declarations of the officers of another corporation to whose property the new corporation succeeded.

Error to Calhoun; Winsor, J. Submitted October 18, 1904. (Docket No. 49.) Decided December 30, 1904.

Assumpsit by the Michigan Sanitarium & Benevolent Association against the city of Battle Creek for taxes paid under protest. There was judgment for plaintiff, and defendant brings error. Affirmed.

*O. S. Clark* and *D. C. Salisbury*, for appellant.

*Charles A. Blair*, Attorney General (*Charles W. Mc-Gill*, of counsel), amicus curiæ.

*Steven S. Hulbert* (*A. J. Mills* and *Jesse Arthur*, of counsel), for appellee.

CARPENTER, J. Plaintiff brings this suit to recover from defendant city taxes for the year 1899 on its real estate, which it claims was exempt from taxation, and which it paid under protest. Plaintiff recovered a verdict and judgment in the court below, and defendant asks a reversal of that judgment on many grounds.

1. The declaration consists of the common counts and two special counts. Many of defendant's complaints are based upon the proposition that plaintiff's cause of action is not properly described in the special counts. We are spared the trouble of considering these complaints, because plaintiff had a right to recover for money had and received under the common counts. See 2 Cooley on Taxation (3d Ed.), p. 1508; *City of Grand Rapids* v. *Blakely*, 40 Mich. 367; *County of Garland* v. *Gaines*, 47 Ark. 558.

2. It is urged that plaintiff cannot maintain this suit, because it paid its taxes, not in money, but by a check, which was subsequently cashed by defendant. This case is very different from *Turnbull* v. *Township of Alpena*, 74 Mich. 627, relied upon by defendant. There it was held that a note payable in the future could not be regarded as payment. The distinction between such a note and a check payable and paid at once is obvious.

Defendant's treasurer, who made the collection, testified that the city taxes were not paid when due; that the payment was extended because plaintiff "asked me not to enforce collection of them until I got my warrant for the State, county, and school taxes, as they intended to pay them both at the same time." Upon this testimony defendant asked the court to charge:

"If * * * payment was postponed at the request of plaintiff * * * on the promise of the plaintiff that it would pay such taxes later, though under protest, then I instruct you the payment was voluntary, and the plaintiff cannot recover."

In support of its contention that error was committed by the trial court in refusing this request, defendant relies on *Gachet* v. *McCall*, 50 Ala. 307. In *Gachet* v. *McCall* it was held that if a taxpayer obtain an extension of time to pay his taxes under a promise to pay the same, a protest made at the time of payment will be ineffectual. The ground upon which this opinion rests is that the taxpayer was bound to pay in accordance with his agreement. If that principle is applied in the case at bar, it would not prevent recovery, because here the facts indicate, as shown by the request under consideration, that the agreement under which the postponement was obtained contemplated a payment of the taxes under protest.

3. Plaintiff became incorporated in July, 1898, under chapter 224 of the Compiled Laws of 1897. Section 1 of that chapter (section 8288, 3 Comp. Laws) provides that "in all cases where lands, or any other property, amounting in value to five thousand dollars or upwards, have been

or shall hereafter be given, granted, devised, or bequeathed to one or more trustees for the purpose of founding or endowing a hospital or other charitable asylum within this State, for the care or relief of indigent or other sick or infirm persons, * * * then the trustees in whom said lands and other property are for the time being vested, may become incorporated. * * *" Section 2 (section 8289, 3 Comp. Laws) specifies what the articles of incorporation shall contain, and requires, among other things, that "the objects of said corporation shall be stated with all convenient fullness and certainty."

Section 6 (section 8293, 3 Comp. Laws) provides:

"All the funds of said corporation shall be faithfully and exclusively used for the purposes thereof, as set forth in its articles, and the same shall be wholly used within this State. Said corporation may invest its funds by loan, on mortgage security, or by purchase of any city, county, State, or United States bonds, or by loan on pledge of the same: *Provided*, that no loan of such funds shall be made to any trustee, officer, or servant of such corporation."

Section 7 ( section 8294, 3 Comp. Laws) provides:

"The property on which said asylum or institution building stands, together with said building, shall, while occupied for the objects and purposes thereof, be exempt from taxation."

The object of plaintiff's corporation, as set forth in its articles, is as follows:

"To found a hospital or charitable asylum within the State of Michigan for the care and relief of indigent or other sick or infirm persons, at which institution may be received also patients and patrons who are able to and do pay for the benefits there received, and which institution shall devote the funds and property acquired and received by it from time to time from all sources, exclusively to maintaining itself, improving its conditions and facilities, extending its benefits and usefulness and facilitating and promoting its purposes, by such sanitary, dietetic, hygienic and philanthropic reforms and efforts as are germane or auxiliary thereto; all of its said purposes being undenomi-

national, unsectarian, philanthropic, humanitarian, charitable, and benevolent, and in no manner, directly or indirectly, for private profit or dividend paying to any one."

The property upon which the taxes in question were paid was the property and sanitarium or hospital building situated thereon of plaintiff. And it claims that the same was exempt from taxation under section 8294, above set forth. This property was transferred to plaintiff after its incorporation. It had formerly been the property of another corporation called the "Health Reform Institute," and was called the "Battle Creek Sanitarium." Plaintiff took possession of this property July 6, 1898, and thereafter operated the same as a hospital or sanitarium.

Plaintiff's testimony shows that at this sanitarium it received and treated sick and infirm persons; that its total receipts from this sanitarium from July 6, 1898, to January 1, 1900, was $764,976.09; that its total disbursements during this same period were more than $20,000 in excess of its receipts; that during this time many patients had been treated free, and that many had paid less than the full price; that if these patients had paid full price, plaintiff's receipts would have been greater by the amount of $35,490.96; that none of plaintiff's funds had ever gone to any member of the association, except as it went to pay wages or salary; and that none of those funds had been used outside of the State except as they were used for the purpose of purchasing supplies.

Defendant contends that this evidence did not warrant a verdict in plaintiff's favor, because: (*a*) It does not appear that plaintiff did not pay dividends upon its stock; (*b*) it does not appear that plaintiff's funds are wholly used within the State, as required by section 8293, 3 Comp. Laws; and (*c*) that plaintiff is not using said alleged exempt property for the business and purposes specified in the act under which it is incorporated.

(*a*) Plaintiff sufficiently proved that it had not paid dividends when it proved that none of its funds had gone to its members except as it paid wages or salary.

(*b*) We sufficiently answer defendant's contention respecting the use of plaintiff's funds by saying that the only evidence contained in the record which touches this question shows that those funds were not used outside the State except for the purpose of purchasing supplies.   Unless we hold that such a purchase of supplies is a use of the funds without the State prohibited by the statute (section 8293, 3 Comp. Laws)—and clearly we cannot so hold —we are bound to say that plaintiff proved that its funds were used within the State within the meaning of the statute.   From this evidence no inference that the statute was violated could be drawn.

In this connection we consider the complaint of defendant that the court erred in charging the jury, in effect, that the burden of proving that the funds were used without the State, in violation of the statute, rested upon defendant and not upon plaintiff.   Even if this charge was erroneous, as defendant contends—which we by no means affirm—we are bound to say that as all the testimony introduced upon the subject shows that the funds were properly used, the error, if error it was, was not prejudicial.

(*c*) The contention of defendant that plaintiff did not occupy this property for the business and purposes specified in the act under which it is incorporated is based upon the claim that the business there carried on by plaintiff was not the charitable business which the statute contemplated.   Plaintiff used the property for a hospital in which it treated sick and infirm persons.   Some of these persons were treated free, some at reduced rate, but apparently most of them paid a regular schedule of prices fixed by plaintiff's management.   The total receipts were less than the total disbursements.   How much of those total disbursements were used for improvements we are not informed.   But as this was a matter defendant could have made clear had it chosen, we have no right to assume that any of these disbursements were illegitimate.   At least, it may be inferred that the charges collected from patients were not larger than were necessary to the successful

maintenance of the institution. Nor is there any testimony from which it may be inferred that there was any unjust discrimination in making those charges. The point is made in appellant's supplemental brief that there is no definite showing of the necessities of the beneficiaries; that is, that those who received treatment free, or at reduced prices, were needy and deserving. The proposition upon which this objection is based is that plaintiff did not have full discretion to select these beneficiaries. If this proposition is sound—which we do not affirm—it is sufficient to say that we will not consider it, because it was not made in the trial court nor in appellant's original brief. It is obvious from this testimony that we cannot say that a verdict should have been directed in defendant's favor without holding that a hospital organized under the law in question cannot collect from patients treated by it sufficient funds for its proper maintenance. If we so hold, we declare that persons who dedicate a hospital to the public must pay taxes on that hospital unless they maintain the same from their private means. The act contains nothing to warrant such a holding. It expressly exempts from taxation "the property on which said asylum or said institution building stands * * * while occupied for the objects and purposes thereof;" that is, while occupied "for the care or relief of indigent or other sick or infirm persons." Such a corporation is sufficiently charitable to entitle it to the privileges of the act when the charges collected for services are not more than are needed for its successful maintenance. See *Philadelphia* v. *Pennsylvania Hospital for the Insane*, 154 Pa. St. 9; *Episcopal Academy* v. *Philadelphia*, 150 Pa. St. 565; *Cawse* v. *Nottingham Lunatic Hospital*, L. R. 26 Q. B. Div. 585; *St. Joseph's Hospital Ass'n* v. *Ashland County*, 96 Wis. 636; *County of Hennepin* v. *Brotherhood of Gethsemane*, 27 Minn. 460; *Linton* v. *Lucy Cobb Institute*, 117 Ga. 678; *Emerson* v. *Trustees of Milton Academy*, 185 Mass. 414; and *Yale University* v. *Town of New Haven*, 71 Conn. 316. It follows from

what we have said that in our judgment the court did not err in refusing to permit defendant to show the number of operations in plaintiff's sanitarium that were paid for; nor in refusing to permit defendant to inquire from plaintiff from what source it obtained the excess of its disbursements over receipts.

4. Complaint is made that defendant's right of cross-examining plaintiff's accountant was unduly restricted by the trial court. This accountant, who was familiar with the plaintiff's books of account, and to a large extent knew the facts respecting the entries therein made, produced plaintiff's books of account. These books were offered in evidence, and an opportunity given to defendant's counsel to examine them. No complaint is made that this opportunity was not sufficient. Instead of reading the items in said books of account into the record, said accountant testified generally as to what they showed. We must assume that defendant acquiesced in this course, for we do not discover that it made any objection, except in one instance, and in that instance the witness testified to the fact from his own knowledge. It is claimed that on the cross-examination of this witness defendant was improperly prevented from showing that the sanitarium was really conducted as a profit-making institution; that it obtained funds from conducting a business forbidden by the statute, and that it used its funds for endowing other institutions of a like character outside the State. We are bound to say that not one of these complaints is well grounded. It is true that the trial court refused to permit defendant to ascertain by the cross-examination of said accountant the number of free operations performed at the institution, and the source of the excess of disbursements over receipts, but the testimony sought to be elicited by these questions clearly would not—and it was not claimed on the trial that it would—prove or tend to prove that plaintiff was carrying on a profit-making business in violation of the statute. It is also true that defendant was not permitted to prove that plaintiff had a branch institution outside the State,

but it was permitted to inquire whether any funds were used for such an institution—and this was as far as a material inquiry would go—and to this question the witness answered that they were not. A diligent search of the record does not disclose that in any other particulars defendant's cross-examination of this witness was restricted.

5. In the brief filed in this case by the attorney general it is said that "it is not the purpose of the act to exempt from taxation the property of the corporation, although organized in the first instance for the purpose of administering such trust, where the administration of such trust is merely incidental to the business carried on, and the business actually carried on actually exceeds that necessary to the administration of the trust by thousands of dollars." By this we understand it to be asserted that because the plaintiff corporation was, as it should be under this act, organized by trustees, who in this case had a fund of only $7,000, the hospital of large value, subsequently acquired by the corporation, is not exempt. We cannot assent to this contention. Section 8294, the section upon which plaintiff's right to exemption depends, exempts from taxation, not the original trust fund, but "the property on which said asylum or said institution building stands * * * while occupied for the objects and purposes thereof." If said property is used for the business and purposes contemplated by the statute, a subject which we have already discussed, it is exempt, whether it was or was not a part of the original trust fund.

6. Included in the description of the exempt property was some property of inconsiderable value not exempt. The trial court charged that it was the duty of defendant to separately assess this property, and having failed to do so, it did not affect plaintiff's right to recover. Defendant contends that this was error. To adjudge this error we must hold that plaintiff lost the benefit of the entire exemption because a small portion of the property was not

exempt. We decided otherwise in *Grand Rapids, etc.,
R. Co.* v. *City of Grand Rapids,* 137 Mich. 587.

7. Defendant complains because the court did not charge
"if the jury find that the plaintiff is using its funds or
any part of the same for any other purposes than the care
and relief of indigent or other sick and infirm persons with-
in this State, then plaintiff cannot recover in this case."
This request lays down a rule which is not required by the
statute, and would, if applied in this case, prevent plain-
tiff using its funds for the proper maintenance of its insti-
tution. It was therefore properly refused.

Defendant also requested the court to charge "the only
direct uses to which the plaintiff can put its property on
which its buildings stand, and the only direct objects for
which the same can be occupied, to exempt it from taxa-
tion, are the care and relief of indigent or other sick or
infirm persons." Assuming that this request correctly
states the law, defendant was not prejudiced by the re-
fusal to give it, because all the testimony indicates that
the property was used for the care and relief of sick and
infirm persons.

8. Defendant claims that the court improperly refused
to permit the introduction of testimony which would have
proved that plaintiff was estopped from claiming this ex-
emption. A portion of this testimony consisted in the acts
and conduct of the officers of the Health Reform Institute,
the corporation which owned the same property before the
organization of plaintiff. This corporation, it seems, was
not exempt, because, presumably, it was not organized
under chapter 224 of the Compiled Laws of 1897. It is
too clear for argument that the declarations, acts, and
conduct of the officials of the old corporation could not
estop the new.

It is urged that the court erred in not permitting defend-
ant to prove that it built a fire station near plaintiff's prop-
erty late in 1898, because one of plaintiff's officers in the lat-
ter part of the summer of 1898 made the statement that
plaintiff was the third largest taxpayer in the city of Bat-

tle Creek. It is not claimed that this statement is in any respect untrue. (Indeed, presumably because plaintiff did not acquire the ownership of the property until July, 1898, it paid its taxes for that year.) But it is claimed that because of this statement defendant had a right to believe, and did believe, that plaintiff would continue to pay its taxes; that is, that it would waive its statutory exemption. It is a sufficient answer to this contention to say that from the statement made to it, which we must assume to be true, defendant could not infer that plaintiff would continue in the future to be a large taxpayer. Neither is it shown that the officer who made said statement had authority to speak for the plaintiff corporation.

Defendant complains of no other error which in our judgment demands discussion, and as plaintiff has waived its request that the court review the decision of the trial court which denied its right to be exempt from taxation on its personal property, the judgment of the court below will be affirmed, without costs.

MOORE, C. J., and MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., took no part in the decision.