# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

Reporter of Decisions:
Kathryn L. Loomis

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

BARUCH SLS, INC v TITTABAWASSEE TOWNSHIP

Docket No. 152047. Argued on application for leave to appeal December 8, 2016. Decided June 28, 2017.

Baruch SLS, Inc., a Michigan nonprofit corporation, sought exemptions from real and personal property taxes as a charitable institution under MCL 211.7o and MCL 211.9 for tax years 2010–2012. Petitioner based its request on the fact that it offered an income-based subsidy to qualifying residents of Stone Crest Assisted Living, one of its adult foster care facilities, provided those residents had made at least 24 monthly payments to petitioner. The Tax Tribunal ruled that Stone Crest was not eligible for the exemptions because petitioner did not qualify as a charitable institution under three of the six factors set forth in *Wexford Med Group v City of Cadillac*, 474 Mich 192 (2006). The Court of Appeals, OWENS, P.J., and MURRAY, J. (JANSEN, J., concurring), in an unpublished per curiam opinion, reversed the Tax Tribunal's findings with respect to two of the *Wexford* factors but affirmed the denial of the exemptions on the ground that petitioner had failed to satisfy the third *Wexford* factor because, by limiting the availability of its income-based subsidy, petitioner offered its services on a discriminatory basis. Petitioner sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant the application or take other peremptory action. 499 Mich 887 (2016).

In a unanimous opinion by Justice MCCORMACK, in lieu of granting leave to appeal, the Supreme Court *held*:

When evaluating whether an institution has met the requirements of the third *Wexford* factor by offering its charity on a nondiscriminatory basis, the key question is whether the restrictions or conditions that the institution imposes bear a reasonable relationship to a permissible charitable goal under the fourth *Wexford* factor. If a reasonable relationship exists, the third *Wexford* factor is satisfied. Because the Tax Tribunal and the Court of Appeals decided the question in this case on the basis of an incorrect understanding of the third *Wexford* factor, the portions of their opinions discussing this factor were vacated and the case was remanded for further proceedings.

1. To qualify for real and personal property tax exemptions under MCL 211.7o(1), the property must be owned and occupied by a nonprofit charitable institution and occupied by that institution solely for the purposes for which it was incorporated. Similarly, MCL 211.9(1)(a) exempts from taxation the personal property of charitable, educational, and scientific institutions,

subject to some limitations. The term "charitable institution" is not defined in the statute, but the *Wexford* Court held that a charitable institution (1) must be a nonprofit institution, (2) is organized chiefly, if not solely, for charity, (3) does not offer its charity on a discriminatory basis by choosing who among the group it purports to serve deserves the services but rather serves any person who needs the particular type of charity being offered, (4) brings people's minds or hearts under the influence of education or religion; relieves people's bodies from disease, suffering, or constraint; assists people to establish themselves for life; erects or maintains public buildings or works; or otherwise lessens the burdens of government, (5) does not charge for its services more than what is needed for its successful maintenance, and (6) need not meet any monetary threshold of charity if the overall nature of the institution is charitable.

2. The act of charging fees for its services does not disqualify an organization from being classified as a charitable institution for purposes of MCL 211.7o and MCL 211.9 on the ground that it offers its services on a discriminatory basis, nor does the act of selecting its beneficiaries. *Wexford*'s fifth factor specifically allows a charitable institution to charge an amount necessary to remain financially stable. The analysis of a charitable institution's fees should be conducted under factor five of the *Wexford* test rather than factor three.

3. *Wexford*'s third factor is intended to exclude organizations that discriminate by imposing purposeless restrictions on the beneficiaries of the charity, and it accomplishes this goal by banning restrictions or conditions on charity that bear no reasonable relationship to an organization's legitimate charitable goals. Whether a charitable institution has a permissible charitable goal is evaluated in factor four, which includes bringing people's minds or hearts under the influence of education or religion; relieving people's bodies from disease, suffering, or constraint; assisting people to establish themselves for life; erecting or maintaining public buildings or works; or otherwise lessening the burdens of government. If the institution's restriction is reasonably related to a goal that meets this standard, then it is acceptable under *Wexford*'s third factor. The "reasonable relationship" test should be construed quite broadly to prevent unnecessarily limiting the restrictions a charity may choose to place on its services. The relationship between the institution's restriction and its charitable goal need not be the most direct or obvious, and any reasonable restriction that is implemented to further a charitable goal that passes *Wexford*'s fourth factor is acceptable.

Court of Appeals judgment vacated in part; Tax Tribunal opinion vacated in part; case remanded to the Tax Tribunal for further proceedings.

©2017 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

FILED June 28, 2017

STATE OF MICHIGAN

SUPREME COURT

BARUCH SLS, INC.,

       Petitioner-Appellant,

v

No. 152047

TITTABAWASSEE TOWNSHIP,

       Respondent-Appellee.

_____

BEFORE THE ENTIRE BENCH

McCORMACK, J.

In this case, we consider whether petitioner, Baruch SLS, Inc. (Baruch), qualifies as a charitable institution for purposes of the exemptions from real and personal property taxes set forth in MCL 211.7o and MCL 211.9. In *Wexford Med Group v City of Cadillac*, 474 Mich 192; 713 NW2d 734 (2006), we articulated a six-factor test for determining whether an institution qualifies as a charitable institution. We now clarify

*Wexford*'s third factor, which requires that an institution not offer its charity on a "discriminatory basis." *Id*. at 215.

As set forth below, the third factor in the *Wexford* test excludes only restrictions or conditions on charity that bear no reasonable relationship to a permissible charitable goal. Because the lower courts did not consider Baruch's policies under the proper understanding of this factor, we vacate the Court of Appeals' and Tax Tribunal's opinions in part and remand this case to the Tax Tribunal for proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Baruch is a Michigan nonprofit corporation registered as tax-exempt under Section 501(c)(3) of the Internal Revenue Code.[1] Baruch's adult foster care facility, Stone Crest Assisted Living (Stone Crest), is open to individuals eighteen years of age and older and is licensed as a specialized care unit with programs for the aged, developmentally disabled, physically handicapped, and mentally ill. An individual may request admission to the facility for the purpose of receiving room, board, supervised personal care, and assistance with medications.

Baruch subscribes to a "faith based" philosophy in its operations, but it is not affiliated with any denomination or church, and it does not consider race, religion, color, or national origin in admissions. Baruch does not admit individuals who require

---

[1] 26 USC 501(c)(3).

2

isolation, restraint, or constant professional nursing care, unless the applicant is being admitted to hospice.

No financial disclosures are required for admission, and Baruch contends that admission decisions are not based on an applicant's ability to pay. Baruch's target occupants, who consist of the elderly and persons with disabilities, however, all qualify for Social Security and therefore all have some ability to pay. And Baruch has never admitted any resident who did not have some ability to pay. But no resident has ever been discharged from the facility for non-payment.

Baruch also maintains an "Income Based Program" at Stone Crest, which reduces a resident's monthly rate on the basis of his or her income. Baruch's written policy for this program includes the following eligibility criteria:

- A resident must have lived at Stone Crest and have made a minimum of 24 full monthly payments.
- A resident must apply for and be determined eligible for Medicaid.
- A resident must provide information about all available income.

The policy also states that only 25% of the available rooms at Stone Crest can be used for the Income Based Program at a given time.

Baruch alleges that, in practice, it has often departed from the written policy. For example, Baruch claims that it has, on an ad hoc basis, admitted residents to the Income Based Program without 24 prior payments, admitted new residents directly into the program, and filled nearly 40% of the available beds with residents in the Income Based Program.

3

Baruch sought tax-exempt status for real and personal property taxes under MCL 211.7o and MCL 211.9 for the years 2010–2012, but was denied. The Tax Tribunal held that Baruch was not entitled to a charitable exemption because Baruch did not satisfy factors three, five, and six of the following test, set forth in *Wexford*, for determining whether a taxpayer is a "charitable institution" under MCL 211.7o and MCL 211.9:

> (1) A "charitable institution" must be a nonprofit institution.

> (2) A "charitable institution" is one that is organized chiefly, if not solely, for charity.

> (3) A "charitable institution" does not offer its charity on a discriminatory basis by choosing who, among the group it purports to serve, deserves the services. Rather, a "charitable institution" serves any person who needs the particular type of charity being offered.

> (4) A "charitable institution" brings people's minds or hearts under the influence of education or religion; relieves people's bodies from disease, suffering, or constraint; assists people to establish themselves for life; erects or maintains public buildings or works; or otherwise lessens the burdens of government.

> (5) A "charitable institution" can charge for its services as long as the charges are not more than what is needed for its successful maintenance.

> (6) A "charitable institution" need not meet any monetary threshold of charity to merit the charitable institution exemption; rather, if the overall nature of the institution is charitable, it is a "charitable institution" regardless of how much money it devotes to charitable activities in a particular year. [*Wexford*, 474 Mich at 215.]

Of particular interest here, the tribunal held that Baruch offered its charity on a discriminatory basis, in violation of factor three. The tribunal also held that Baruch had not met its burden to prove that the rates it charged were not more than what was needed

4

for its successful maintenance, in violation of factor five, and that Baruch's overall nature of operation was commercial, in violation of factor six.

The Court of Appeals affirmed the tribunal's judgment, on the basis that Baruch's policies were discriminatory within the group it served in violation of factor three.[2] But the Court of Appeals reversed the tribunal regarding factors five and six. Because neither party has challenged the Court of Appeals decision regarding factors five and six, the sole issue on appeal is whether Baruch's policies are discriminatory within the meaning of factor three.

## II. LEGAL BACKGROUND

To qualify for real and personal property tax exemptions under MCL 211.7o(1), the property must be "owned and occupied by a nonprofit charitable institution . . . [and] occupied by that . . . institution solely for the purposes for which [it] was incorporated." Similarly, MCL 211.9(1)(a) exempts from taxation the "personal property of charitable, educational, and scientific institutions," subject to some limitations. The term "charitable institution" is not defined in the statute, but this Court has interpreted the meaning of that phrase on several occasions.

In *Wexford*, we announced the above-described test for evaluating whether an institution is "charitable." The Court in *Wexford* began its analysis with the statutory language governing the charitable exemption:

> "Real or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution

---

[2] Judge JANSEN concurred in the result only.

5

solely for the purposes for which it was incorporated is exempt from the collection of taxes under this act." [*Wexford*, 474 Mich at 199, quoting MCL 211.7o.]

The "central inquiry" in *Wexford* was "whether petitioner [was] a 'charitable institution,' and, in a more general sense, what precise meaning that term has." *Id*. To answer that question, we analyzed the history of the term "charitable institution" in our caselaw. *Id*. at 205-212.

From a century of doctrine we saw "[s]everal common threads." *Id*. at 212. The first was that "the institution's activities as a whole must be examined; it is improper to focus on one particular facet or activity." *Id*. Second, we noted that the organization can serve a particular group, but that within that group it must not discriminate. As we explained,

> the organization must offer its charitable deeds to benefit people who need the type of charity being offered. In a general sense, there can be no restrictions on those who are afforded the benefit of the institution's charitable deeds. This does not mean, however, that a charity has to serve every single person regardless of the type of charity offered or the type of charity sought. Rather, a charitable institution can exist to serve a particular group or type of person, but the charitable institution cannot discriminate within that group. The charitable institution's reach and preclusions must be gauged in terms of the type and scope of charity it offers. [*Id*. at 213.]

We concluded that the definition of "charity" set forth in *Retirement Homes of the Detroit Annual Conference of the United Methodist Church, Inc v Sylvan Twp*, 416 Mich 340, 348-349; 330 NW2d 682 (1982), encapsulates what an exemption claimant must show to constitute a charitable institution:

> "[Charity] * * * [is] a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by

6

relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." [*Wexford*, 474 Mich at 214 (quotation marks and citation omitted; alterations in original).]

Applying the six-factor test, we held that the petitioner in *Wexford* was a charitable institution. Among other reasons, we emphasized that

[p]etitioner has a charity care program that offers free and reduced-cost medical care to the indigent with no restrictions. It operates under an open-access policy under which it accepts any patient who walks through its doors, with preferential treatment given to no one. Although petitioner sustains notable financial losses by not restricting the number of Medicare and Medicaid patients it accepts, it bears those losses rather than restricting its treatment of patients who cannot afford to pay. [*Id*. at 216-217.]

Thus, because the petitioner "provid[ed] a gift—free or below-cost health care—to an indefinite number of people by relieving them of disease or suffering," it was entitled to the exemption. *Id*. at 220-221.

## III. ANALYSIS

The *Wexford* test is designed to differentiate charitable organizations from other kinds of institutions, but it is not designed to require an institution to offer its services entirely free or to select its recipients using only arbitrary criteria, such as first-come, first-serve, in order to qualify as a charitable institution. Yet the language in *Wexford* is, to some extent, susceptible to this interpretation, and indeed, this is how lower courts have understood *Wexford*'s third factor.

Since *Wexford*, the Tax Tribunal has, on several occasions, interpreted the test's third factor—that the institution not discriminate—as excluding organizations from the tax exemption simply because they charged fees for their services. Specifically, the

7

tribunal has held that a facility seeking an exemption as a low-cost daycare did not satisfy the third factor solely because it did not accept those who could not afford to pay at all. *Genesee Christian Day Care Servs, Inc v City of Wyoming*, unpublished opinion of the Michigan Tax Tribunal, issued Dec 22, 2011 (Docket No. 361657), pp 20-21. Similarly, the tribunal has held that a gymnastics facility that offered financial assistance in the form of scholarships was not a charitable organization, partially because it did not offer scholarships to all who might benefit. *Boyne Area Gymnastics, Inc v Boyne City*, unpublished opinion of the Michigan Tax Tribunal, issued Mar 23, 2011 (Docket No. 320068), p 7. The Court of Appeals has similarly analyzed this issue. *North Ottawa Rod & Gun Club, Inc v Grand Haven Charter Twp*, unpublished per curiam opinion of the Court of Appeals, issued August 21, 2007 (Docket No. 268308), p 3 (holding that the petitioner's recreational facilities could not be considered gifts to the general public without restriction because the property was only available to the general public for a fee).

Further, relying on *Wexford*'s statement that a charitable institution may not "choos[e] who, among the group it purports to serve, deserves the services," *Wexford*, 474 Mich at 215, the tribunal and the Court of Appeals have also interpreted the third factor to forbid a charitable institution from selecting its beneficiaries at all. For instance, the Court of Appeals has affirmed the Tax Tribunal's conclusion that an institution that "selects scholarship recipients through a highly subjective application process" based on the candidates' essays, references, community service, and other accomplishments offered its charity on a "discriminatory basis." *Telluride Ass'n Inc v City of Ann Arbor*, unpublished per curiam opinion of the Court of Appeals, issued July 16, 2013 (Docket

8

No. 304735), p 4. Yet if an institution cannot serve everyone who could benefit from the service (as most cannot), surely it will have to select its beneficiaries in some manner. But the Tax Tribunal in the case below disapproved of any selection, stating that "[t]he mere process of selecting residents who will receive reduced rent requires some level of discrimination in that a choice must be made from the group Petitioner purports to serve." *Baruch SLS, Inc v Tittabawassee Twp*, unpublished opinion of the Michigan Tax Tribunal, issued Dec 20, 2013 (Docket No. 395010), p 15. The Court of Appeals similarly concluded that Baruch had failed to comply with *Wexford* factor three because its "policy means petitioner does not 'serve[] any person who needs the particular type of charity being offered.' " *Baruch*, unpub op at 5, quoting *Wexford*, 471 Mich at 215. Under this kind of analysis, it is unclear how a charitable institution can comply with the third factor unless, perhaps, it allocates its services using an arbitrary metric, such as a lottery or first-come, first-serve.

We see several problems with interpreting *Wexford* factor three to exclude an organization from the definition of a charitable institution if it charges any amount or uses any non-random selection criteria. First, as noted above, it creates an internal inconsistency in *Wexford*'s factors. Factor five specifically allows a charitable institution to charge an amount necessary to remain financially stable. See *Wexford*, 474 Mich at 215 ("A 'charitable institution' can charge for its services as long as the charges are not more than what is needed for its successful maintenance."). Factor three should be read harmoniously with factor five, and the current interpretation employed by the lower courts does not do so. Second, it is inconsistent with our precedent. In *Mich Sanitarium & Benevolent Ass'n v Battle Creek*, 138 Mich 676; 101 NW 855 (1904), a case on which

9

*Wexford* relied, the hospital at issue did not offer its services entirely for free. *Id*. at 681. Indeed, the Court refused to hold "that a hospital organized under the law in question cannot collect from patients treated by it sufficient funds for its proper maintenance," because such a holding would require taxes to be paid on any charitable institution that was not maintained through "private means." *Id*. at 683. The Court noted that "[t]he act contains nothing to warrant such a holding." *Id*.

Third, the interpretation employed by the lower courts requires charitable institutions to operate at a loss. Charitable institutions incur costs in the provision of their services. Requiring them to provide their services entirely for free, without regard for their ability to do so, is unrealistic and unsustainable. Factor five and the other *Wexford* factors strike the right balance. We hold that the analysis of a charitable institution's fees should not be conducted under factor three of the *Wexford* test. Instead, such fees should be assessed under factor five.

But restrictions or conditions designed to limit or choose who is entitled to receive the charity, such as Baruch's written policy that a resident must have lived at Stone Crest and have made a minimum of 24 monthly payments before entering the Income Based Program, are the subject of factor three. Factor three is intended to exclude organizations that discriminate by imposing purposeless restrictions on the beneficiaries of the charity. We clarify that *Wexford* factor three accomplishes this goal by banning restrictions or conditions on charity that bear no reasonable relationship to an organization's legitimate charitable goals. See *Wexford*, 474 Mich at 213 ("The charitable institution's reach and

10

preclusions must be gauged in terms of the type and scope of charity it offers.").[3]

Whether a charitable institution has a permissible charitable goal is evaluated in factor four, which includes "bring[ing] people's minds or hearts under the influence of education or religion; reliev[ing] people's bodies from disease, suffering, or constraint; assist[ing] people to establish themselves for life; erect[ing] or maintain[ing] public buildings or works; or otherwise lessen[ing] the burdens of government." *Id*. at 215. If the institution's restriction is reasonably related to a goal that meets this standard, then it is acceptable under *Wexford* factor three.

The "reasonable relationship" test should be construed quite broadly to prevent unnecessarily limiting the restrictions a charity may choose to place on its services. Other states, employing similar tests, have interpreted them flexibly to allow a charity, for example, to limit itself to the most qualified groups, see *Mayo Foundation v Comm'r of Revenue*, 306 Minn 25, 37-38; 236 NW2d 767 (1975), to restrict its services to those

---

[3] Other jurisdictions have used a similar method to analyze restrictions or conditions on charity. See *North Star Research Institute v Hennepin Co*, 306 Minn 1, 6; 236 NW2d 754 (1975); see also *Utah Co v Intermountain Health Care, Inc*, 709 P2d 265, 270 n 6 (Utah, 1985) (adopting a six-factor standard "adapted from" the *North Star* factors).

The *North Star* factors are similar to the *Wexford* factors in many respects. In particular, *North Star* factor five, which is similar to *Wexford* factor three, inquires "whether the beneficiaries of the 'charity' are restricted or unrestricted and, if restricted, whether the class of persons to whom the charity is made available is one having a reasonable relationship to the charitable objectives[.]" *North Star*, 306 Minn at 6; see also *Worthington Dormitory, Inc v Comm'r of Revenue*, 292 NW2d 276, 280-282 (Minn, 1980) (holding that a foundation's dormitory was tax-exempt when the only restriction on the beneficiaries of the charity was a requirement that residents be students at nearby community college, because such a restriction reasonably related to the foundation's purpose of providing nonprofit housing to students).

11

persons its services are tailored to serve, see *Yorgason v Co Bd of Equalization of Salt Lake Co*, 714 P2d 653, 654-655, 657 (Utah, 1986), and to tailor its services toward groups that are particularly disadvantaged and have specific needs, see *White Earth Land Recovery Project v Becker Co*, 544 NW2d 778, 781 (Minn, 1996).

Examples may help demonstrate the flexibility of this test. A low-cost daycare organized to provide services to low-income families could reasonably prioritize the applications of single-parent families. Single-parent households might often, for wholly obvious and understandable reasons, have lower income than households with two parents. Single-parent households might also be less likely to have a parent able to stay home with the child and, therefore, are again more likely to be in need of daycare services. This restriction would thus bear a reasonable relationship to the organization's charitable goals because it seeks to provide its services to those most in need of such services.[4]

By contrast, a low-cost daycare that prioritizes the applications of families who cheer for a certain baseball team should fail this test if the daycare cannot show how the restriction bears a reasonable relationship to a permissible charitable goal. That is not to say that such a restriction would not be permissible under any circumstances. Suppose a scholarship, which is funded through a baseball team's charitable foundation, restricts its

---

[4] As the Minnesota Supreme Court has put it, a restriction on the charitable institution's services that is "designed to assure that the benefits will inure to those most deserving, most in need, or most likely to be of increased public usefulness when the benefits have been assimilated" would likely bear a reasonable relationship to the charitable goal. *State v Evans Scholars Foundation of Minn, Inc*, 278 Minn 74, 78; 153 NW2d 148 (1967). A charity is not required, however, to implement only such restrictions.

applications to fans of the team. If the foundation can show that its fundraising is more successful when the application process is limited to fans of the team, then even this restriction might pass the test articulated today because the baseball team cannot offer scholarships if it is not able to gain the necessary donations to fund them.[5]

In short, the relationship between the institution's restriction and its charitable goal need not be the most direct or obvious. Any reasonable restriction that is implemented to further a charitable goal that passes factor four is acceptable. While this test is quite deferential to the charitable institution, we note that charity is, by definition, "a gift." See *Retirement Homes of Detroit*, 416 Mich at 349 (concluding that the petitioner's retirement home provided no gift to residents and therefore was not charity). The Legislature has deemed gifts that are beneficial to members of society worthy of encouragement. A deferential test is warranted given that the tax statute itself is silent as to the restrictions a charity may or may not place on its services. MCL 211.7o; MCL 211.9(a). Therefore, we hesitate to stringently limit charitable institutions.

Accordingly, rather than focusing on the "group" that a charitable institution "exist[s] to serve," *Wexford*, 474 Mich at 213, we hold that the key question a court must ask when evaluating whether an institution has met *Wexford*'s third factor is whether the restrictions or conditions the institution imposes on its charity bear a reasonable relationship to a permissible charitable goal. The question in this case, then, is whether

---

[5] Whether the desire to attract donors or the need to increase an organization's funds will always justify restrictions on the charitable services offered is not something we decide today; the relationship between the proffered restriction and the charitable goal must be evaluated for reasonableness on a case-by-case basis.

the conditions for entry into Baruch's charitable Income Based Program—specifically, the requirement that an individual be a resident and make 24 monthly payments before being accepted into the program—violates factor three of the *Wexford* test. Under our clarification of this factor, Baruch's conditions will fail only if they are not reasonably related to a permissible charitable goal under factor four.

Because the Tax Tribunal and the Court of Appeals decided the question in this case on the basis of an incorrect understanding of *Wexford* factor three, we vacate those portions of the opinions discussing the third factor and remand this case to the Tax Tribunal for further proceedings consistent with this opinion.

Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder